Filed 9/23/24  P. v. Gallegos CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRYAN GALLEGOS,<br><br>    Defendant and Appellant. | B329376<br><br>(Los Angeles County<br>Super. Ct. No. NA105111) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General Plaintiff and Respondent, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General.

———————————

Bryan Gallegos (defendant) tailed a car occupied by his ex-girlfriend and Armando Amaya, ultimately forcing them to stop at a dead end. Defendant then exited his own car carrying a loaded gun, approached Amaya, and shot him in the face at close range. A jury convicted defendant of first degree murder. Defendant argues there was insufficient evidence that he acted with premeditation and deliberation. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

## I.    Facts[1]

Defendant and Nicole Tejada met in 2009 and dated until September 2015. They had a child together and maintained contact after they broke up, in order to coparent their son. Tejada dated Armando Amaya between February 2016 and May 2016, and they remained friends thereafter. Defendant "was the jealous type towards" Tejada, even though they were no longer a couple.

On September 4, 2016, defendant and Tejada spent the morning together. They shopped to find Tejada a jersey for a sports-themed birthday party she would attend later that day. Tejada told defendant that the party was at Break Room bar in Long Beach, but she did not invite him along. Defendant and Tejada ate together and went to defendant's house before defendant dropped her off in the afternoon.

Tejada picked up a couple of friends before heading to the Break Room. They arrived around 3:45 p.m., and remained there, socializing and drinking until just after 11:00 p.m. While Tejada was at the bar, she and defendant exchanged text

---

[1]     These facts are derived from the evidence presented at trial.

messages about what each one was doing.  Cell phone records showed that defendant was in Wilmington at 10:57 p.m., but was in the Break Room area by 11:07 p.m.

At some point, the party attendees went outside to smoke cigarettes, and a fight broke out.  After the fight, Tejada and others at the party decided to drive to a friend's house in Wilmington.  Tejada took the driver's seat of her car, and Amaya took  the passenger seat.

Tejada turned out of the parking lot, and, shortly thereafter, noticed a car following her "super close."  Surveillance video footage showed defendant's car following Tejada's.  After Tejada changed lanes, and saw the car behind her also change lanes, she recognized it as defendant's car.  She sped up because she "had [Amaya] in the car and . . . knew [defendant] was going to get mad at [her] for being with a guy."  Tejada missed her intended freeway exit, "kept driving until [she] couldn't go anymore," and stopped at a dead end.  Defendant stopped his car next to hers.  Defendant's friend, Edgar Robledo, was in the passenger's seat of his car.  Defendant exited  the driver's seat, "came to [Tejada's] car door," "opened [it], . . . started yelling" at her and struck her with his fist, asking "who the fuck is that?"  Defendant told Amaya to get out of the car.  Amaya complied, responding that he would walk from there.  Surveillance video shows defendant walked around the back of Tejada's car to the passenger's side where Amaya was standing and then stood very close to Amaya after which Amaya collapsed to the ground.  A medical examiner confirmed that Amaya was shot in the face from "a few inches" away, and that the bullet entered Amaya's nose, fractured his cheekbone, and continued through his pharynx and then through the spine in his neck.

After shooting Amaya, defendant ordered Tejada out of her car. Defendant told her, "I just mugged him," and told her to get into his car. Tejada took the passenger's seat of defendant's car, and Robledo drove to an area of Wilmington known as "Ghost Town." Defendant took Tejada's car and followed them.

The two cars stopped on a dark street in Ghost Town, next to junkyards and shipping containers. Robledo exited defendant's car, and defendant took the driver's seat, threw Tejada a balloon, and told her to fill it up with "noz," or nitrous oxide—an inebriant of sorts. Tejada declined, and defendant filled the balloon himself, and inhaled the noz. He then drove Tejada home, leaving her car in Ghost Town.

When they reached Tejada's home, defendant walked Tejada into her room. Tejada was upset and crying, and asked defendant why he did what he did. Defendant responded, "You're lucky I didn't pop your ass too."

## II. Procedural Background

The People charged defendant with murder (Pen. Code, § 187, subd. (a)),[2] and alleged that he killed the victim by lying in wait (§ 190.2, subd. (a)(15)), a principal was armed (§ 12022, subd. (a)(1)), defendant personally used a firearm (§ 12022.53, subd. (b)), and he personally discharged a firearm (§ 12022.53, subd. (c)), which caused great bodily injury (§ 12022.53, subd. (d)).[3] The People also charged defendant with assault with a

---

[2]    Further statutory references are to the Penal Code.

[3]    Robledo pleaded guilty to voluntary manslaughter.

4

deadly weapon on a police officer (§ 245, subd. (c)).[4]

The jury convicted defendant of first degree murder and found true all three firearm enhancements. The jury found not true the lying-in-wait allegation. The jury also found defendant not guilty of assault with a deadly weapon upon a police officer, but guilty of the lesser-included offense of assault with a deadly weapon.

The trial court sentenced defendant to 53 years to life in state prison, comprised of 25 years to life on each of the base murder count and the firearm enhancement, and three years for the assault charge.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues his first degree murder conviction must be reversed or reduced to second degree murder because there was insufficient evidence he acted with premeditation and deliberation.

### I. Standard of Review

We review a jury's finding that a defendant acted with premeditation and deliberation for substantial evidence, asking whether the record " ' " ' "discloses . . . evidence – that is evidence which is reasonable, credible, and of solid value" ' " ' " from which "*any* rational trier of fact" could make that finding beyond a reasonable doubt. (*People v. Rivera* (2019) 7 Cal.5th 306, 323; *People v. Perez* (1992) 2 Cal.4th 1117, 1127.) In undertaking this inquiry, we view the record in the light most favorable to the jury's finding by deferring to the jury's credibility determinations,

---

[4]     We have omitted the facts underlying this second count because it is not at issue in this appeal.

drawing all reasonable inferences in support of the finding, and resolving all evidentiary conflicts in favor of the finding. (*People v. Salazar* (2016) 63 Cal.4th 214, 242 (*Salazar*); *People v. Maury* (2003) 30 Cal.4th 342, 396.)

## II. Law on Premeditation and Deliberation

" ' "Premeditation means thought over in advance' " (*People v. Sandoval* (2015) 62 Cal.4th 394, 424), and "deliberation" means a " 'careful weighing of considerations in forming a course of action' " (*Salazar*, *supra*, 63 Cal.4th at p. 245). " ' "The process of premeditation and deliberation does not require any extended period of time" ' "; what matters is the "extent of the reflection, not the length of time." (*Salazar,* at p. 245.; *People v. Nelson* (2011) 51 Cal.4th 198, 213 ["Thoughts may follow each other with great rapidity, and cold, calculated judgment may be arrived at quickly"].) In evaluating whether a defendant has committed a murder with premeditation and deliberation, courts look to—but are not limited to—three factors: (1) whether the defendant had a motive to kill the victim; (2) whether the defendant in any way planned the killing; and (3) whether the defendant's manner of killing evinced a design to kill. (*People v. Morales* (2020) 10 Cal.5th 76, 88-89, citing *People v. Anderson* (1968) 70 Cal.2d 15, 26-27; *People v. Brooks* (2017) 3 Cal.5th 1, 58.)

## III. Substantial Evidence Supports the Jury's Finding of Premeditation and Deliberation

Substantial evidence supports the jury's finding of premeditation and deliberation in this case, as all three factors relevant to this finding are present. (*People v. Steele* (2002) 27 Cal.4th 1230, 1250 (*Steele*) [where "all three categories of evidence exist," substantial evidence exists].)

6

### A.  *Motive*

Substantial evidence indicated defendant acted with jealous motive.  (*People v. Disa* (2016) 1 Cal.App.5th 654, 666 [jealousy is evidence of motive].)  Tejada testified that defendant was jealous of the men in Tejada's life, Defendant pursued Tejada and her male companion at close range until she stopped at a dead end, and, in the moments before shooting Amaya, furiously confronted Tejada, demanding that she tell him "Who the fuck is that?"

### B.  *Planning*

The evidence likewise showed planning.  Defendant knew Tejada was at the Break Room bar, as Tejada had told him of her plans, and defendant and Tejada were texting one another throughout the evening about what they were doing.  Defendant took a loaded gun to the Break Room (e.g., *People v. Lee* (2011) 51 Cal.4th 620, 636 (*Lee*) [bringing loaded handgun suggests planning]; *Steele, supra*, 27 Cal.4th at p. 1249 [bringing knife into victim's home shows planning]), and just as Tejada left the bar for another party, defendant followed her "super close" in his own car, switching lanes when she did, and speeding after her as she sought to get away.  After defendant and Tejada arrived at the dead end, defendant exited his car and approached Tejada's car with a loaded gun.  Ample evidence shows defendant's act of killing " ' "occurred as the result of preexisting reflection rather than unconsidered or rash impulse." ' "  (*Lee, supra*, at p. 636.)

### C.  *Manner of Killing*

Defendant's manner of killing also supports premeditation and deliberation.  Defendant shot Amaya at close range, in the face.  (*People v. Cage* (2015) 62 Cal.4th 256, 277 [close-range gunshot to face suggested premeditation]; *People v. Thompson*

(2010) 49 Cal.4th 79, 114-115 ["a close-range shooting without any provocation . . . reasonably supports an inference of premeditation and deliberation"]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1082 [firing at vital area at close range suggests premeditation].)

In sum, substantial evidence supported each of the three factors determinative of premeditation and deliberation

**D.** *Defendant's Arguments*

Defendant argues the evidence supports an inference that he carried the gun for "protection," thus vitiating the evidence of planning, and that the prosecution's theory of motive was undermined by evidence that he and Tejada were no longer in a relationship. These arguments do not refute the ample evidence of planning and motive, including defendant's taking a loaded gun to the Break Room, his trailing Tejada's car at close range, and his longstanding jealousy of Tejada's other male companions. There is no evidence defendant needed a loaded gun to "protect" himself from Tejada or her male companion; indeed there was no evidence that either of them carried any weapons at all.

With regard to the manner of killing, defendant argues the surveillance video must be discounted because it does not reveal with precision what occurred in the moments before defendant's victim collapsed to the ground. Defendant urges that the video is "consistent with" an accidental firing of the gun after the victim tried unsuccessfully to grab defendant's weapon. Critically, notwithstanding the video's imperfections, there is no actual evidence of an accident, either within the video or in the other evidence presented at trial, and much of the evidence is to the contrary. The video shows defendant pulling up alongside the car driven by Tejada, confronting Tejada, and then engaging with

8

Amaya. After Amaya collapses, defendant does not make any gesture of surprise or concern and, to the contrary, immediately proceeds to pull Tejada from her vehicle, swaps cars, and then drives away from his murder victim. Defendant's ensuing conversation with Tejada, telling her he "mugged" the victim and should have killed her too further underscores the absence of an accident. Even if the video may be viewed as "consistent" with an accidental gun discharge, the jury received abundant evidence of premeditation such that viewing the record in the "light most favorable to the judgment" (*Salazar*, *supra*, 63 Cal.4th at p. 242) precludes our setting aside the jury's verdict.

Defendant also points to the lack of evidence showing defendant knew Amaya, and urges that "[t]he record support[s] defense counsel's argument that [defendant's] sole intent in being there and carrying his gun . . . was for protection [of Tejada]." At bottom, defendant asks us to reweigh the evidence and come to a conclusion more favorable to him. This is an invitation we must decline. (*People v. Alexander* (2010) 49 Cal.4th 846, 883 [our role is not to reweigh the evidence, but rather to determine whether substantial evidence supports the jury's choices between conflicting evidence and reasonable inferences arising therefrom]; accord *People v. Werntz* (2023) 90 Cal.App.5th 1093, 1117, fn. 9.)

9

**DISPOSITION**

The judgment of conviction is affirmed.


DAVIS, J.<sup>*</sup>

We Concur:


BAKER, Acting P. J.



MOOR, J.

*     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.